UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES BOLAND, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>FORTIS CONSTRUCTION COMPANY, LLC,<br><br>    Defendant. | Civil Action No. 10-1701 (BAH)<br>Judge Beryl A. Howell |

**MEMORANDUM OPINION**

Trustees of the Bricklayers and Trowel Trades International Pension Fund (hereinafter "IPF")[1] filed this case against defendant Fortis Construction Company, LLC (hereinafter "Fortis"), seeking to collect employer withdrawal liability pursuant to the Multiemployer Pension Plan Amendment Act (hereinafter "MPPAA") and the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA"). Defendant Fortis has moved to dismiss the Complaint on grounds that the Court lacks both subject matter and personal jurisdiction, and is the improper venue for the case. Alternatively, the defendant has requested the Court to transfer the case to the United States District Court for the Western District of Missouri. For the reasons set forth below, the defendant's motion to dismiss or for change of venue is denied.

**I.  BACKGROUND**

Plaintiffs allege that at some unspecified time prior to 2008, Diaz Construction Co., Inc. (hereinafter "Diaz Construction"), a building and construction company based in Missouri, executed a collective bargaining agreement with the Bricklayers and Trowel Trades International Union (hereinafter "the Union") and its local affiliates. Compl. ¶¶ 5-6. Although the parties do

---
[1] Named as plaintiffs are fifteen IPF Trustees.

1

not supply the agreement or state Diaz's obligation under the CBA, the plaintiffs state that pursuant to such contracts, "employers are obligated to make contributions to the Fund in order to fund the benefits provided to the participants and beneficiaries." Pls.' Opp'n Mot. Dismiss, ECF No. 6, Ex. A, David F. Stupar Decl. (hereinafter "Stupar Decl."), ¶ 2. The defendant does not appear to contest the obligations of Diaz Construction, as a signatory with the Building and Allied Craftworkers Union, Local 15, to make such payments. Def.'s Reply, ECF No. 7, Ex. A, Armando Diaz Decl. (hereinafter "Diaz Decl."), ¶¶ 5-6.

On May 12, 2008, Armando Diaz, formerly doing business as Diaz Construction, filed a Chapter 7 petition for bankruptcy protection in the United States Bankruptcy Court for the Western District of Missouri. Compl. ¶ 7. While Mr. Diaz's interests in Diaz Construction became property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a)(1) – and Diaz Construction ceased to exist following liquidation of the company's assets pursuant to Chapter 7 of the Bankruptcy Code – plaintiffs allege that defendant Fortis is "the successor to, continuation of, alter ego of, and/or under the same management and stock control as Diaz Construction," and is therefore liable for Diaz Construction's debts and obligations. Compl. ¶¶ 4, 5, 9. To support this contention, plaintiffs allege that Fortis and Diaz Construction "shared some officers, directors, and equipment" and that Fortis "performed the same type of work in the same geographic areas as that performed by Diaz Construction." *Id*. ¶ 8.

While the defendant generally denies the plaintiffs' alter ego allegation, it confirms that Armando Diaz, the former sole owner of Diaz Construction, is now the "Managing Member of Fortis" and one of "five members who own an interest in Fortis." Diaz Decl., ¶¶ 1, 3, 5. According to Mr. Diaz's declaration, he operated Diaz Construction from 1991 to May 2007 and,

following the bankruptcy of Diaz Construction in May 2008, began serving as a managing member of Fortis on October 30, 2009. *Id.* ¶¶ 1, 5.

Based on the plaintiffs' determination that Fortis is Diaz Construction's alter ego, the plaintiffs concluded that the defendant withdrew from the IPF under Section 4203(b) of ERISA, 29 U.S.C. § 1383(b), which states that a building and construction employer "withdraws" from a plan if the employer ceases to have an obligation to contribute under the plan and either (1) continues to perform work in the jurisdiction of the collective bargaining agreement, or (2) resumes such work within five years after the date on which the obligation to contribute to the plan ceased. Compl. ¶¶ 10, 11. On April 6, 2010, the IPF notified the defendant that it owed $453,577.00 of "Withdrawal Liability" pursuant to Sections 4201 and 4219 of ERISA, 29 U.S.C. §§ 1381 and 1399, and demanded payment on a schedule set in accordance with Sections 4202 and 4219(b)(1) of ERISA, 29 U.S.C. §§ 1382 and 1399(b)(1). *Id.* ¶ 11. Under the payment schedule, the defendant was "to submit $25,892.43 to the IPF on or before June 7, 2010, $25,892.43 per month for 17 additional months, and a final payment of $1,162.83." *Id.* ¶ 12.

Plaintiffs allege that despite sending notice to the defendant of its withdrawal liability, the defendant failed to make payments pursuant to the schedule. *Id.* ¶ 13; Stupar Decl., ¶ 9. Plaintiffs then sent the defendant a letter informing the defendant that if it did not begin making interim payments within 60 days, by August 28, 2010, it would be deemed in default pursuant to 29 U.S.C. § 1399(c)(5) and internal IPF Withdrawal Liability Procedures. Compl. ¶ 13, Ex. B.

In response, the defendant requested a review of the plaintiffs' Withdrawal Liability assessment and the plaintiffs responded to this request. *Id.* ¶ 14. According to the plaintiffs, to

3

date the defendant has not submitted payments for withdrawal liability, nor has it initiated arbitration proceedings.[2] *Id.*

On October 15, 2010, the plaintiffs filed a Complaint alleging that because of the defendant's failure to submit withdrawal liability payments, the defendant is in default under Sections 4219(c)(5) of ERISA, 29 U.S.C. § 1399(c)(5), and the full amount of the Withdrawal Liability is now due. *Id.* ¶ 15. Plaintiffs further assert that the alleged default should be treated in the same manner as delinquent contributions under Sections 4219(c)(5) and 4301(b) of ERISA, 29 U.S.C. §§ 1399(c)(5) and 1451(b),[3] and under the IPF's internal Withdrawal Liability Procedures. *Id.* ¶ 16.

Plaintiffs request the Court to declare the defendant an alter ego of Diaz Construction, and award the plaintiffs $547,997.62, which represents the defendant's outstanding Withdrawal

---

[2] Pursuant to 29 U.S.C. § 1401, if the defendant sought to contest withdrawal liability, it was required to initiate arbitration proceedings. If an employer fails to initiate arbitration proceedings it may not contest withdrawal liability. *See* 29 U.S.C. § 1401(b)(1) ("If no arbitration proceeding has been initiated pursuant to subsection (a) of this section, the amounts demanded by the plan sponsor under section 1399(b)(1) of this title shall be due and owing . . . ."). Plaintiffs claim in their papers that due to the defendant's failure to initiate arbitration, it "has already waived any rights it had to challenge the fact that it owes (on alter ego, common control, or any other grounds) the withdrawal liability in the amount assessed by the IPF." Pls.' Opp'n Mem., ECF No. 6, at 3 n.3. In this case, however, the defendant contests whether it should even be subject to provisions of the MPPAA and ERISA, and thereby be obligated to initiate arbitration, because it disputes the allegation that it is the alter ego of Diaz Construction. This alter ego determination is a question for the court. *See N.Y. State Teamsters Conf. Pension and Retirement Fund v. Express Servs., Inc.*, 426 F.3d 640, 646 (2d Cir. 2005) ("[A] number of courts have drawn a distinction between disputes over (1) whether the defendant was ever an employer obligated under the MPPAA to make payments to the plaintiff pension fund, and (2) whether the defendant ceased to have that obligation before the payments in question became due. Courts addressing this distinction have uniformly held that the former question is for the court, while the latter is for the arbitrator.") (citing cases); *Doherty v. Teamsters Pension Trust Fund of Phila. and Vicinity*, 16 F.3d 1386, 1390-91 (3d Cir. 1994) ("Whether [defendants] are properly subjected to withdrawal liability *as alter egos* . . . is a different kind of question" which is "properly resolved in the courts." (emphasis added)).

[3] Section 4219(c)(5) of ERISA provides that "[i]n the event of a default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made." 29 U.S.C. § 1399(c)(5); *see also* 29 U.S.C. § 1451(b) ("In any action under this section to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution . . . .").

4

Liability of $453,577.00; interest in the amount of $3,355.22, liquidated damages of $90,715.40, litigation costs, and attorneys' fees. Compl., Prayer for Relief, ¶¶ 1-4.[4]

On December 8, 2010, the defendant moved to dismiss the Complaint on three grounds: (1) the Court lacks subject matter jurisdiction over the plaintiffs' claims, which are predicated on the erroneous conclusion that the defendant is the alter ego of Diaz Construction; (2) the Court lacks personal jurisdiction over the defendant; and (3) the District of Columbia is the improper forum to litigate this case. In the alternative, the defendant requests the Court to transfer this case to the Western District of Missouri, which the defendant argues is the proper venue for this case. For the foregoing reasons, the Court denies the defendant's motion to dismiss or for transfer of venue. The Court addresses each of defendant's arguments *seriatim* below.

## II. STANDARD OF REVIEW

Federal courts are fora of limited jurisdiction, only possessing the power authorized by the Constitution and statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (internal citations omitted). Therefore, when a defendant brings a motion to dismiss for lack of subject matter or personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) or (2), "the [p]laintiff bears the burden of establishing by a preponderance of the evidence that the Court possesses jurisdiction." *Hollingsworth v. Duff*, 444 F. Supp. 2d 61, 63 (D.D.C. 2006) (citing *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002)); *see also Crane v. N.Y. Zoological*

---

[4] Plaintiffs' requested damages are consistent with those authorized under ERISA. *See* 29 U.S.C. § 1451(b) ("[A]ny failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution . . . ."); 29 U.S.C. § 1132(g)(2) (detailing damages awards for delinquent contribution actions).

5

*Soc'y,* 894 F.2d 454, 456 (D.C. Cir. 1990); *Pitney Bowes, Inc. v. U.S. Postal Serv.*, 27 F. Supp. 2d 15, 19 (D.D.C. 1998)).

The Court generally "assume[s] the truth of all material factual allegations in the complaint and construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged, and upon such facts determine jurisdictional questions." *American Nat. Ins. Co. v. FDIC*, No. 10-cv-5245, 2011 WL 2506043, at *1 (D.C. Cir. June 24, 2011) (internal citations and quotations omitted); *see also Crane,* 894 F.2d at 456 ("[F]actual discrepancies appearing in the record must be resolved in favor of the plaintiff."); *DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14, 20 (D.D.C. 2002) (the plaintiff's factual assertions in the Complaint are "presumed to be true unless directly contradicted by affidavit").[5] In the absence of an evidentiary hearing, the plaintiff need only make a prima facie showing that the Court has personal jurisdiction. *Mwani v. Bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005).

The Court is not limited to the allegations set forth in the complaint, and "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." *Jerome Stevens Pharms., Inc. v. FDA*, 402 F. 3d 1249, 1253 (D.C. Cir. 2005); *see also United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000) (the court "may receive and weigh affidavits and other relevant matter to assist it in determining the jurisdictional facts"). When the defendant challenges the factual basis for jurisdiction, "the court may not deny the motion to dismiss merely by assuming the truth of the facts alleged by the plaintiff and disputed by the defendant, but must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to

---

[5] The defendant baldly asserts that "no presumption of truthfulness applies to the factual allegations" and cites *Richards v. Duke University,* 480 F. Supp. 2d 222, 232 (D.D.C. 2007). Def's Mem. Supp. Mot. Dismiss, ECF No. 4, at 2. This is incorrect. There is no presumption of truthfulness when, as in *Richards*, a plaintiff's allegations are "fantastic and incredulous" and are "wholly insubstantial or frivolous." *Richards,* 480 F. Supp. 2d at 232.

dismiss." *Erby v. United States*, 424 F. Supp. 2d 180, 183 (D.D.C. 2006) (internal quotations omitted) (quoting *Phx. Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000)). Indeed, "the court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiffs' legal conclusions." *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006); *see also Moore v. Motz*, 437 F. Supp. 2d 88, 91 (D.D.C. 2006) ("Plaintiff must allege specific facts on which personal jurisdiction can be based; [and the plaintiff] cannot rely on conclusory allegations.").

### III. DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER AND PERSONAL JURISDICTION

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and (2), the defendant moves to dismiss this case for lack of subject matter and personal jurisdiction. Specifically, the defendant argues that prior to reaching the plaintiffs' allegation that the defendant owes withdrawal liability under ERISA, the Court must first resolve whether the defendant is Diaz Construction's alter ego. As this determination is not a question of federal law, the defendant asserts that the Court does not have subject matter jurisdiction over the controversy, under Rule 12(b)(1). In addition, the defendant argues it does not have the requisite contacts with the District of Columbia to sustain the Court's exercise of personal jurisdiction, under Rule 12(b)(2). The Court concludes that it has subject matter jurisdiction over the plaintiffs' allegations and has personal jurisdiction over the defendant given the allegation that the defendant is the alter ego of Diaz Construction. Accordingly, the defendant's motion to dismiss the Complaint on these grounds is denied.

#### A. The Court Has Subject Matter Jurisdiction Over the Claim of Defendant's Alter Ego Liability for ERISA Obligations

The defendant does not dispute that the Court maintains subject matter jurisdiction over disputes arising under ERISA. To be sure, the Act explicitly grants the Court jurisdiction to hear

7

such claims. *See* 29 U.S.C § 1451(c) ("The district courts of the United States shall have exclusive jurisdiction of an action under this section without regard to the amount in controversy . . . ."). The defendant seeks dismissal of this case, however, because "[t]he underlying, likely dispositive issue in the lawsuit . . . is that Fortis is the alter ego of [Diaz Construction]. The determination of whether Fortis is the alter ego of Diaz is not a subject that has been authorized by the Constitution or by statute for this Court to adjudicate." Def.'s Mem. Supp. Mot. Dismiss, ECF No. 4, at 3.

The defendant is correct that the Court does not have independent authority to adjudicate alter ego claims. Indeed, in *Peacock v. Thomas*, 516 U.S. 349 (1996), the Supreme Court held that the federal courts do not have subject matter jurisdiction to adjudicate claims of alter ego liability or entertain requests to pierce the corporate veil when these claims are brought independent of any other federal cause of action. *Id.* at 354-55 (holding that plaintiff "alleged no 'underlying' violation of any provision of ERISA or an ERISA plan" in an action to enforce a previous Court judgment imposing liability on a third-party, and thus plaintiff's "veil-piercing claim does not state a cause of action under ERISA and cannot independently support federal jurisdiction") (internal quotations and citations omitted).

When claims of alter ego liability are intertwined with a federal cause of action, however, the Court may assert subject matter jurisdiction over all allegations contained in a plaintiff's Complaint, even ones not arising under federal law, pursuant to 28 U.S.C. § 1367. Indeed, Congress has granted the Court the authority to exert supplemental subject matter jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The fundamental question in this case is whether the

plaintiffs' allegation that the defendant is the alter ego of Diaz Construction is "so related to claims in [this] action . . . that they form part of the same case or controversy." It is clear to the Court that it is.

As other courts have stated, "[i]f an alter-ego claim is asserted in conjunction with the underlying federal cause of action, the latter may provide the basis for ancillary jurisdiction over the alter-ego claim, obviating *Peacock* concerns; [and] it is only when an alter-ego claim is asserted in a separate judgment-enforcement proceeding that *Peacock* requires an independent basis for federal jurisdiction." *Ellis v. All Steel Constr. Inc.*, 389 F.3d 1031, 1033 (10th Cir. 2004) (internal citations omitted); *see also Rive v. Briggs of Cancun, Inc.*, No. Civ.A. 99-2204, 2000 WL 98127 at *2 (E.D.La. Jan. 26, 2000) ("[I]f a district court has federal question jurisdiction of the main claim in an action, it has supplemental jurisdiction of a state-law alter-ego claim raised in the same action, if the alter-ego claim is "factually interdependent" with the main claim."); *Laborers Combined Funds of W. Pa. v. Ruscitto*, 848 F. Supp. 598, 601 n.4 (W.D.Pa. 1994) ("Having concluded that plaintiffs' have stated claims under ERISA, defendants' argument that this Court lacks subject matter jurisdiction is without merit . . . . Because the Court has original jurisdiction based upon a federal question and because the plaintiffs' [claims] form a part of the same case, this Court has supplemental jurisdiction over these claims."). Courts have consistently exercised subject matter jurisdiction over ERISA claims intertwined with questions regarding alter ego liability, and this Court concludes that supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, is proper here. *See Flynn v. R.C. Tile*, 353 F.3d 953, 958 (D.C. Cir. 2004); *Bd. of Trustees, Nat'l Shopmen Pension Fund v. N. Steel Corp.*, 657 F. Supp. 2d 155, 159 (D.D.C. 2009). Accordingly, the defendant's motion to dismiss for lack of subject matter jurisdiction is denied.

### B. The Court Has Personal Jurisdiction Over the Defendant if it is the Alter Ego of Diaz Construction

The defendant asserts that it maintains no connection to the District of Columbia. It is incorporated in Missouri and headquartered in Kansas City, Missouri. Def.'s Mem. Supp. Mot. Dismiss, ECF No. 4, at 4. It has never owned property, maintained an office or conducted business in, nor had "contacts of any kind" with, the District of Columbia. *Id.;* Diaz Decl., ¶¶ 4, 6. Moreover, the defendant asserts that "even if this Court presumes there is an applicable District of Columbia long-arm statute that would otherwise allow this Court to have statutorily granted jurisdiction, this Court does not have constitutional personal jurisdiction over [defendant] Fortis and Diaz [Construction] because neither have had any contacts in the District of Columbia." Def.'s Mem. Supp. Mot. Dismiss, ECF No. 4, at 6.

Typically, to exercise personal jurisdiction over a non-resident, the Court must examine whether jurisdiction is applicable under the relevant long-arm statute, D.C. CODE § 13-423, and must also determine whether jurisdiction satisfies the requirements of due process. *See GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). Due Process requires the plaintiff to show that the defendant has "minimum contacts" with the forum, thereby ensuring that "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *see also GTE New Media Servs.*, 199 F.3d at 1347.

Consideration of personal jurisdiction in the context of claims asserted under ERISA, however, is different. Under Section 4301(b) of ERISA, a withdrawal liability action "may be *served* in any district where a defendant resides, does business, or may be found." 29 U.S.C. § 1451(d) (emphasis added). Courts interpreting a functionally identical ERISA national service of process provision have held that "[f]or purposes of ERISA actions, the fact that [the

defendant] has not conducted business in this district does not preclude the Court's exercise of personal jurisdiction over it." *Flynn v. Ohio Bldg. Restoration, Inc.*, 260 F. Supp. 2d 156, 170 (D.D.C. 2003) (considering 29 U.S.C. § 1132(e)(2)).[6] Indeed, "[w]here Congress has authorized nationwide service of process, a federal court may exercise personal jurisdiction over *any United States resident*, without regard to whether its sister state court could assert jurisdiction under minimum contacts principles." *Id.* (quoting *Combs v. Adkins & Adkins Coal Co.*, 597 F. Supp. 122, 125 (D.D.C. 1984)) (emphasis added).

As the defendant suggests, the concept of nationwide service of process may seem at odds with the basic due process concerns of the personal jurisdiction inquiry. However, this "issue has several times been considered by judges in this District Court; each has agreed that nationwide service suffers from no constitutional infirmity." *I.A.M. Nat. Pension Fund Plan A v. Technical Tape*, No. 87-cv-2451, 1988 WL 13287, at *2 (D.D.C. Feb. 4, 1988) (citing cases); *see also Briggs v. Goodwin*, 569 F.2d 1, 8-10 (D.C. Cir. 1977) *rev'd on other grounds sub nom. Stafford v. Briggs*, 444 U.S. 527 (1980)); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056-57 (2d Cir. 1993). Accordingly "when a federal court is attempting to exercise personal jurisdiction over a defendant in a suit based upon a federal statute providing for nationwide service of process, the relevant inquiry is whether the defendant has had minimum contacts *with the United States*." *Ohio Bldg.*, 260 F. Supp. 2d at 171 (emphasis added) (quoting *Bellaire Gen. Hosp. v. Blue Cross Blue Shield*, 97 F.3d 822, 826 (5th Cir. 1996)); *see also I.A.M. Nat. Pension Fund Plan A,* 1988 WL 13287, at *2 ("The only contacts possibly relevant to the

---

[6] *Ohio Bldg.* considered ERISA's service of process provision for actions involving delinquent employer contributions, as opposed to withdrawal liability, and therefore involved a different national service of process statute than the one at issue in the current action. However, the service of process provisions for delinquent contributions, 29 U.S.C. § 1132(e)(2), and withdrawal liability, 29 U.S.C. § 1451(d), are functionally identical.

validity of such service are defendant's contacts with the United States." (citations omitted)). This requirement is clearly satisfied here.

The Court recognizes that the defendant is subject to this Court's jurisdiction, pursuant to the statutory provisions of ERISA, based solely on the fact that the plaintiffs claim it is the alter ego of Diaz Construction, a third-party that no longer exists. For the purposes of determining personal jurisdiction at this stage in the litigation, the Court must accept all of the plaintiffs' factual allegations not contradicted by affidavit as true. To do otherwise would "conflate jurisdiction with the merits" as the question of "[w]hether or not [the defendant] will be found liable under plaintiffs' 'alter ego' theory is a separate issue from whether there exists jurisdiction over it pursuant to ERISA's nationwide service provision." *Ohio Bldg.*, 260 F. Supp. at 173.

Although the plaintiffs have the burden of demonstrating that jurisdiction is proper, once the plaintiffs asserted a cause of action for withdrawal liability under the MPPAA and ERISA, personal jurisdiction over the defendant became presumptively proper. *See IUE AFL-CIO Pension Fund*, 9 F.3d at 1056 ("Having stated a colorable claim against defendants under the MPPAA, the district court has personal jurisdiction over the defendants insofar as the MPPAA includes a provision for nationwide service of process."). That said, the Complaint and associated exhibits provide only barebones allegations and minimal evidence to substantiate the plaintiffs' determination that the defendant is the alter ego of Diaz Construction.[7]

The defendant, however, does little to rebut the plaintiffs' allegations. While stating that the defendant is "not the successor to, continuation of, alter ego of, or under common control" of Diaz Construction, the defendant confirms that Armando Diaz, the former sole owner of Diaz

---

[7] To determine whether two businesses are alter egos, the court "evaluates the similarities between the two enterprises in their ownership, management, business purpose, operations, equipment and customers." *Flynn v. Veazey Const. Corp.*, 424 F. Supp. 2d 24, 33 (D.D.C. 2006) (quoting *Flynn v. R.C. Tile*, 353 F.3d 953, 958 (D.C. Cir. 2004)).

Construction, is now the "Managing Member of Fortis;" that Fortis conducts business "in the states of Kansas and Missouri," the same geographical area where Diaz Construction conducted business; and that Fortis "performs multiple types of work, including . . . masonry," while Diaz Construction was also a "commercial masonry company." Diaz Decl., ¶¶ 1, 2, 5. The defendant seeks to defeat a finding that Fortis is the alter ego of Diaz Construction by stating that Armando Diaz is only one of "five members who own an interest in Fortis," and Fortis performs a broader range of construction services than Diaz Construction. *Id.* ¶¶ 1-3, 5. Instead of contradicting the alter ego allegation, however, the defendant's assertions raise more questions – *e.g.*, who are the other members with an ownership interest in the defendant and did these individuals also work at or have a management role in Diaz Construction? What is the percentage ownership that Armando Diaz continues to have in Fortis? Does the defendant, as alleged, use the same equipment that Diaz Construction once used? In its initial pleadings, the defendant has not presented the Court with sufficient evidence contradicting plaintiffs' alter ego claims for the Court to find that the exercise of personal jurisdiction is improper. Without evidence directly rebutting the plaintiffs' alter ego claim, the Court must accept the plaintiffs' allegations.[8] Accordingly, the defendant's motion to dismiss for lack of personal jurisdiction is denied.

---

[8] The plaintiffs state that if this Court were to accept defendant's argument that the Court lacks jurisdiction, "dismissal would not be warranted without the IPF having the opportunity to engage in jurisdictional discovery." Pls.' Opp'n Mem., ECF No. 6, at 3 n.3. When a party's contacts with the jurisdiction are unclear, the Court may grant, if requested, a period of jurisdictional discovery for the plaintiff to gather evidence to support the Court's exercise of jurisdiction. *See GTE New Media Servs.,* 199 F.3d at 1351-52 (reversing lower court's finding of personal jurisdiction, but stating that "[t]his court has previously held that if a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified."). Typically, jurisdictional discovery is reserved for situations in which the plaintiff needs to gather evidence to rebut a defendant's assertion that personal jurisdiction is not proper so that the defendant may not defeat personal jurisdiction by withholding information regarding its contacts with the forum. In this case, the Court is presented with a different scenario. Personal jurisdiction is presumptively proper due to the plaintiffs' cause of action for withdrawal liability under ERISA, which provides for nation-wide service of process. The burden is therefore on the defendant to present evidence to refute the plaintiffs' jurisdictional claims. The defendant is already in possession of any evidence that would potentially aid it in refuting plaintiffs' alter ego claim, and a period of jurisdictional discovery is not needed.

## IV. THE DEFENDANT'S MOTION TO DISMISS OR TRANSFER FOR IMPROPER VENUE

The defendant also moves to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3). This argument deserves only summary treatment. Pursuant to Section 4301(d) of ERISA, actions seeking to collect withdrawal liability "may be brought in the district where the plan is administered or where a defendant resides or does business . . . ." 29 U.S.C. § 1451(d). The IPF is administered in the District of Columbia, and therefore venue is clearly proper. Accordingly, the defendant's motion to dismiss for improper venue is denied.

Alternatively, the defendant argues that if the Court does not dismiss the Complaint, the Court should transfer the case to the Western District of Missouri pursuant to 28 U.S.C. § 1404(a). Venue in this forum is proper, however, and balancing of the relevant interests demonstrates that transfer is not appropriate.

### A. Standard of Review

Under the federal venue transfer statute, 28 U.S.C. § 1404, a district court may transfer a case to another district "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The Court may only transfer a case to another district "where it might have been brought." *Id.* This statute "vests discretion in the District Court to adjudicate motions for transfer on an 'individualized, case-by-case consideration of convenience and fairness.'" *Otter v. Salazar*, 718 F. Supp. 2d 62, 63-64 (D.D.C. 2010) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). Courts evaluate a series of public and private interest factors in determining whether to grant a transfer of venue. *Bederson v. United States*, 756 F. Supp. 2d 38, 46 (D.D.C. 2010). "The private interest factors that are considered include: (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to the

sources of proof." *Id.* "The public interest factors . . . include: (1) the local interest in making local decisions regarding local controversies; (2) the relative congestion of the transferee and transferor courts; and (3) the potential transferee court's familiarity with the governing law." *Id.* "[C]ourts have imposed a heavy burden on those who seek transfer and a court will not order transfer unless the balance is strongly in favor of the defendant." *United States v. Microsemi Corp.*, No. 1:08-cv-1311, 2009 WL 577491, at *6 (E.D. Va. Mar. 4, 2009). On a motion to transfer, "the moving party bears the burden of establishing that transfer is proper." *Flynn v. Veazey Constr. Corp.*, 310 F. Supp. 2d 186, 193 (D.D.C. 2004) (citing *Trout Unlimited v. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996)).

### B. Discussion

In this case, the defendant requests the Court to transfer the case to the Western District of Missouri because the "alleged actions all took place in and around Kansas City, Missouri" and venue in this Court is "neither proper nor convenient." Def.'s Mem. Supp. Mot. Dismiss, ECF No. 4, at 9. While evaluation of a request to transfer a case involves a balancing of public and private interest factors, in the context of an ERISA action, the Court is guided primarily by considerations of public policy.

"In the ERISA context, a defendant seeking a transfer of venue has the additional burden of surmounting ERISA's special venue provision." *Veazey Const. Corp.*, 310 F. Supp. 2d at 193 (citing 29 U.S.C. § 1132(e)(2)[9]; *Flynn v. Daly & Zilch Mason Contractors, Inc.*, No. 00-cv-3027, slip op. at 1-2 (D.D.C. June 6, 2001)). "Since Congress has enacted a special venue provision to allow multi-employer pension plans to more efficiently collect delinquent contributions, the burden on the defendants in this case is especially heavy." *Int'l Bhd. of Painters and Allied Trades Int'l Bhd. of Painters and Allied Trades Union v. Best Painting and*

---

[9] *See supra* note 6.

15

*Sandblasting Co., Inc.*, 621 F. Supp. 906, 907 (D.D.C. 1985). The Court affords "special weight to a plaintiff's choice of forum in ERISA cases." *Veazey Const. Corp.*, 310 F. Supp. 2d at 193 (citations omitted). Due to the special weight afforded the plaintiff's choice of forum in ERISA actions, the court "need not engage in a lengthy analysis to determine that transfer is not warranted." *Id*. Consequently, courts have "reject[ed] virtually every attempt to transfer ERISA actions under [28 U.S.C.] § 1404(a)." *Id.* (citing cases).

The defendant states that it is a "small, upstart company that is attempting to begin its business in what is one of, if not the worst construction economies in the past 25 years" and that "defense of this lawsuit is a major, unforeseen expense." Diaz Decl., ¶ 11. Although the Court recognizes the significant cost and expense of litigating this case half-way across the country, the Court must weigh the defendant's burden against the public policy rationales for allowing ERISA Funds their choice of forum. Indeed, the plaintiffs state that "[g]iven the thousands of Fund delinquencies and withdrawals and the literally of dozens of cases actually being litigated at any given time, it would be virtually impossible for [the Fund] to ensure the collection of employer delinquencies and withdrawal liability if the Fund's ERISA actions were transferred to the location of the employer." Stupar Decl., ¶ 20. Thus, as another court has noted, "[a]lthough it may be 'inconvenient to the defendant[ ] [to have to defend this action in this district], it is convenient to the plan, reducing its costs, to the benefit of all plan beneficiaries. Congress has balanced the plan's interest and permitted suit where the plan is located.'" *Ohio Bldg.*, 260 F. Supp. 2d at 171-72 (quoting *Med. Mut. of Ohio v. deSoto*, 245 F.3d 561, 568 n.4 (6th Cir. 2001)) (alterations of internal quotation in original) (additional citations omitted); *see also Combs v. Adkins & Adkins Coal Co.*, 597 F. Supp. 122, 125 (D.D.C. 1984) (rejecting a motion to transfer an ERISA withdrawal liability action, adding that "it makes good sense to hear this case where

the Plans are administered"). The IPF's decision to litigate in this forum is entitled to special weight, and transfer of this case will only shift the inconvenience from one party to another. Accordingly, transfer of this case is not warranted and the defendant's motion for transfer of venue is denied.

## V. CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss or for transfer of venue is denied. An Order consistent with this Memorandum Opinion will be entered.

**DATED: JULY 12, 2011**

/s/ *Beryl A. Howell*
BERYL A. HOWELL
United States District Judge